IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN S. WILLIAMSON; | ) | CIVIL NO. 04-CV-885 BB WDS |
| NANCY L. WILLIAMSON; | ) | |
| GARRETT JAMES WILLIAMSON; | ) | |
| DAVID ANDREW WILLIAMSON; | ) | |
| JOHN GREGORY WILLIAMSON; | ) | |
| DEBORAH KRUHM; NEW MEXICO | ) | |
| TAXATION AND REVENUE | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendants | ) | |

PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The United States of America submits these proposed findings of fact and conclusions of law.

PROPOSED FINDINGS OF FACT

I.

Background

1.  On August 4, 2004, the United States filed this suit to reduce to judgment certain income tax assessments against John S. Williamson and Nancy L. Williamson (Williamsons). The suit seeks to foreclose federal tax liens against the real property located at  31 Ben Road, Edgewood, Bernalillo County, New Mexico ( "the Ben Road  property"). This suit also seeks to set aside and avoid conveyances by the Williamsons in April 1982 of the real property located at 23 Dinah Road,

Edgewood, New Mexico ("the Dinah Road property") to their then minor sons, John Gregory Williamson, David Andrew Williamson, and Garrett James Williamson, as fraudulent, and to foreclose federal tax liens against the Dinah Road property.  It also seeks to obtain a judgment against the Williamsons for any amounts remaining unpaid after the distribution and application of the proceeds when the real properties are sold and to recover the costs of this action.  Deborah Kruhm, the sister of John S. Williamson, was joined as a defendant because she may claim an interest in the Ben Road property.

2. The Dinah Road property is located in this judicial district and is more particularly described as follows:

> Lot numbered One (1) in Block Numbered Six (6) of a plat of the lands of Frank H. Martin and James C. Farrington, which lands are commonly known as HOLIDAY HILLS as said lot is shown and designated on the plat of Holiday Hills, filed in the office of the County Clerk of Bernalillo County, New Mexico.

> Lot numbered Two (2) in Block Numbered Six (6); and Lot numbered Fourteen (14) in Block Numbered Five (5) of a plat of the lands of Frank H. Martin and James C. Farrington, which lands are commonly as known as HOLIDAY HILLS as said lots are shown and designated on the plat of Holiday Hills, filed in the office of the County Clerk of Bernalillo County, New Mexico, on May 21, 1957.

3.  The Ben Road  property is located in this judicial district and is more particularly described as follows:

>  Lot numbered Six (6) in Block Numbered Three (3) of the Plat of the lands of Frank H. Martin and James C. Farrington, which lands are commonly known as "HOLIDAY HILLS" and which Plat was filed in the office of the County Clerk of Bernalillo County, New Mexico.

4.  On December 29, 2005, this Court entered a Memorandum Opinion and Order, granting the first motion for partial summary judgment of the United States.  That motion sought to reduce federal income tax assessments to judgment against John S. Williamson for years 1985, 1986, 1987, and 1993, and against Nancy L. Williamson for years 1994, 1995, 1996, 1997, and 1998.  The Court held that John S. Williamson was indebted to the United States in the aggregate amount of $157,676.67, as of May 1, 2004, and that Nancy L. Williamson was indebted to the United States in the aggregate amount of $36,745.73, as of May 1, 2004, plus statutory additions and accruals thereafter until paid.

5.  On August 24, 2006, the Court entered a Memorandum Opinion and Order, granting the second motion for partial summary judgment of the United States.  That motion sought to foreclose the federal tax liens on the interests of the Williamsons in the Ben Road property to satisfy their delinquent income tax liabilities.

6.  On October 13, 2006, the Court entered a Memorandum Opinion and Order, denying the third motion for partial summary judgment of the United States.  That motion sought to establish that the April 30, 1982, transfers by John S. and Nancy L. Williamson of their interests in the Dinah Road real property to their then minor sons should be set aside as fraudulent.  In the alternative, the Government sought to establish that the sons held title to the property as nominees of their parents. The Memorandum Opinion and Order also denied the first and second motion to dismiss the complaint filed by defendants John S. Williamson, Nancy L. Williamson, David Andrew Williamson, John Gregory Williamson, Garrett James Williamson, and Deborah Kruhm (collectively the "Williamson defendants"),  rejecting their arguments that there is no "kind of tax 1040" as

-3-

frivolous and without merit.  In denying the Williamson defendants' first and second motion to dismiss, the Court stated it would entertain appropriate sanction motions.

7.  The Court conducted a PreTrial Conference on October 24, 2006, and called the case for a bench trial on November 6, 2006.

II.

Undisputed Material Facts

The following undisputed material facts were established from the first, second and third motions for partial summary judgment of the United States:

1.      On the dates and in the amounts set forth below, a delegate of the Secretary of the Treasury made assessments against John S. Williamson for unpaid federal income taxes and statutory additions to tax and gave notice of demand for payment thereof for the taxable periods indicated:

| Taxable Year Ending | Assessment Date | Assessed Additional Tax | Assessed Penalties | Assessed Interest | Assessed Fees and Collection Costs |
|---|---|---|---|---|---|
| 12-31-85 | 10-10-1994 | $ 7,405.00 | $   425.00a | $4,489.13 | |
| | | | $5,947.57b | | |
| | 02-14-2000 | | | $17,782.43 | |
| | 12-08-2003 | | | | $18.00 |
| | | | | | |
| 12-31-86 | 01-09-1995 | $10,843.00 | $ 521.00a | $5,041.44 | |
| | | | $10,652.72b | | |
| | 03-27-1995 | | | $ 9,666.02 | |
| | 02-14-2000 | | | $21,131.21 | |
| 12-31-87 | 10-10-1994 | $ 6,059.00 | $327.00a | $1,987.90 | |
| | | | $5,538.00b | | |
| | | | | | |
| 12-31-93 | 08-08-1994 | $  514.00 (per return) | | | |
| | 10-13-2003 | | | | $18.00 |

a. estimated tax penalty
b. fraud penalty

     2.      Despite notice of the assessments and demand for payment, John S. Williamson

failed to fully pay his federal tax liabilities and was indebted to the United States in the amount of

$152,676.67, as of May 1, 2004, and for interest, penalties and other additions to tax allowed by law

accruing thereafter.

     3.      By virtue of John S. Williamson's neglect or failure to pay in full, after notice

of assessment and demand for payment, a lien arose in favor of the United States, under 26 U. S. C.

Sections 6321 and 6322, as of the dates of assessment in an amount equal to the unpaid assessments,

plus statutory additions, against all property and rights to property, whether real or personal, of John S. Williamson.

    4.    On the dates and in the amounts set forth below, a delegate of the Secretary of the Treasury made assessments against Nancy L. Williamson for unpaid federal income taxes and statutory additions to tax and gave notice of demand for payment thereof for the taxable periods indicated:

| Taxable Year Ending | Assessment Date | Assessed Additional Tax | Assessed Penalties | Assessed Interest | Assessed Fees and Collection Costs |
|---|---|---|---|---|---|
| 12-31-94 | 09-08-1998 | $4,428.00 | $ 108.86a<br>$ 582.75b | $1,025.00 | |
| | 02-07-2000 | | | | $14.00 |
| 12-31-95 | 03-06-2000 | $5,550.00 | $ 158.86a<br>$ 798.00b | $1,539.17 | |
| | 09-18-2000 | | | | $14.00 |
| 12-31-96 | 03-06-2000 | $5,843.00 | $ 165.52a<br>$ 845.75b | $1,139.03 | |
| 12-31-97 | 03-06-2000 | $5,953.00 | $ 181.04a<br>$ 910.25b | $ 730.90 | |
| 12-31-98 | 04-16-2001 | $6,032.00 | $ 148.41a<br>$ 792.45b<br>$ 440.25c | $ 800.41 | |
| | 02-09-2004 | | | | $18.00 |

a. estimated tax penalty
b. late filing penalty
c. failure to pay penalty

5.      Despite notice of the assessments and demand for payment, Nancy L. Williamson failed to fully pay her federal tax liabilities assessments and was indebted to the United States in the amount of $36,745.73, as of May 1, 2004.

6.      By virtue of Nancy L. Williamson's neglect or failure to pay in full, after notice of assessment and demand for payment, a lien arose in favor of the United States, under 26 U. S. C. Sections 6321 and 6322, as of the dates of assessment in an amount equal to the unpaid assessments, plus statutory additions, against all property and rights to property, whether real or personal, of Nancy L. Williamson.

7.      John S. Williamson and Nancy L. Williamson are husband and wife.

8.      After graduating from high school in Albuquerque, they attended the University of New Mexico.

9.      Nancy L. Williamson received a degree in nursing from the University of New Mexico in 1967.

10.     The Williamsons were married in June 1967.

11.     John S. Williamson received a degree in industrial education from the University of New Mexico in 1969 or 1970.

12.     The Williamsons have three sons, Defendants John Gregory Williamson, David Andrew Williamson, and Garrett James Williamson.

13.     John Gregory Williamson was born in ███████ 1970, David Andrew Williamson was born in ███████ 1971, and Garrett James Williamson was born in ███████, 1976.

14.     After graduating from college, John S. Williamson was a junior high school teacher in Albuquerque public schools until around 1976 or 1977.

15.     In 1976, John S. Williamson started working as a water well contractor, doing business as Williamsons' Waterworks.

16.     John S. Williamson, with his three sons, currently conducts the water well contracting business under the name The Water Works Ltd. from the 23 Dinah Road property.

17.     The  Water Works Ltd. drills and services water wells.

18.     John S. Williamson and his three sons store the drilling equipment they use in the water well contracting business at the Dinah Road property when it is not located on a job site.

19.     John S. Williamson does not pay his three sons rent to use the 23 Dinah Road property to operate his water well contracting business, but his sons share in the profits of the business.

20.     John Gregory Williamson received a degree in mechanical engineering in 1993 from the University of New Mexico.

21.     David Andrew Williamson attended the University of New Mexico and received a degree from TVI.

22.     Garrett James Williamson received an associates degree from TVI.

23.     From 1989 to 1999, Nancy L. Williamson was employed as a staff nurse for the University of New Mexico.

24.     Since 1999, Nancy L. Williamson has been employed as a nurse by the Albuquerque public school system.

25.      The Williamsons have been involved in litigation with the Internal Revenue Service for more than two decades and have a long history of refusing to file federal income tax returns. Courts have rejected their arguments challenging the federal income tax laws as "frivolous and groundless."

26.      John S. Williamson did not file federal income tax returns for years 1978 through and including 2005.

27.      On April 28, 1971, Robert E. Honaker conveyed the Dinah Road property by warranty deeds to the Williamsons.

28.      On September 7, 1973, Joseph Walter Buschek and Renee R. Buschek conveyed the Ben Road property by warranty deed to Isabel H. Williamson, John S. Williamson and Deborah Kruhm, as joint tenants with rights of survivorship.

29.      Deborah Kruhm is the sister of John S. Williamson.

30.      Isabel H. Williamson, the mother of John S. Williamson and Deborah, died in 1986.

32.      Deborah Kruhm resides at 2267 Calle Pulido, Santa Fe, New Mexico.

34.      John Gregory Williamson resides with his parents at the Ben Road property.

37.      Defendant Garrett James Williamson resides at 824 Adams St. NE, Albuquerque, New Mexico.  .

38.      David Andrew Williamson  resides on the Dinah Road property.

39.      On December 23, 1981, the United States Tax Court in Docket No. 7582-78 entered a Memorandum Opinion determining a deficiency of $608 in federal income tax against the Williamsons for year 1976.

40.     The Williamsons did not file federal income tax returns for years 1980, 1981, and 1982.

41.     On March 3, 1987, the United States Tax Court in Docket No. 42468-86 entered a Memorandum Opinion, determining federal income tax deficiencies in excess of $7,000 against the Williamsons for years 1980, 1981, and 1982, and imposing $5,000 in sanctions against them for advancing frivolous and groundless arguments.

42.     On April 30, 1982, the Williamsons transferred Lot 1, Block 6 of the Dinah Road property by warranty deed to their sons, Garrett James Williamson and David Andrew Williamson.

43.     On April 30, 1982, the Williamsons transferred Lot 2, Block 6 of the Dinah Road property by warranty deed to their sons, David Andrew Williamson and John Gregory Williamson.

44.     On April 30, 1982, the Williamsons transferred Lot 14, Block 5 of the Dinah Road property by warranty deed to their sons, Garrett James Williamson and John Gregory Williamson.

45.     On April 30, 1982, John Gregory Williamson was twelve (12) years old, David Andrew Williamson was ten (10) years old and Garrett James Williamson was five (5) years old.

46.     John Gregory Williamson, David Andrew Williamson and Garrett James Williamson paid no consideration to their parents for the Dinah Road property lots.

48.     On April 30, 1982, the Williamsons owed federal income taxes for year 1976 and had
failed to file federal income tax returns for years 1978, 1979, 1980 and 1981.

49.     The three lots that comprise the Dinah Road property are contiguous.

50.     One of the three lots that comprise the Dinah Road property adjoins the Ben Road property.

51.     The Williamsons began building a house on the Dinah Road  property before they transferred it to their minor sons.

52.     The house had two  floors above ground, a basement,  three bedrooms and three baths, consisting of about 4000 total square feet, and a two- car garage.

53.     Before transferring it to their minor sons, the  Williamsons and their three sons lived on the Dinah Road property.

54.     After the  transfers, the Williamsons and their three sons continued to live on the Dinah Road property for about ten years.

55.     The Williamsons paid the propane gas bills, the electricity bills, and the ad valorem property taxes for the Dinah Road property after April 30, 1982, while they continued to live there with their sons.

56.     The Williamsons moved from the Dinah Road property because the house became too expensive to heat.

57.     On April 2, 1990, the Williamsons filed a Chapter 7 bankruptcy proceeding[1], Case 7-90-0096 MA.   Their Chapter 7 bankruptcy petition was signed on February 17, 1990, more that a month before it was filed.

58.     On October 31, 1996, the Internal Revenue Service filed a Notice of Federal Tax

---

[1]On information and belief, this Chapter 7 proceeding was determined to be a no-asset case and the IRS received no distribution from the bankruptcy estate.

Lien against Garrett James Williamson and David Andrew Williamson as nominees of John S. Williamson in regards to Lot 1, Block 6 of the Dinah Road property in the real property records of Bernalillo County, New Mexico in the aggregate amount of $84,682.92 for tax years 1983, 1985, 1986, 1987, and 1993.

59.     On June 1, 2004, the Internal Revenue Service re-filed a Notice of Federal Tax Lien against Garrett James Williamson and David Andrew Williamson as nominees of John S. Williamson in regards to Lot 1, Block 6 of the Dinah Road property in the real property records of Bernalillo County, New Mexico in the aggregate amount of $69,296.95 for tax years 1985, 1986, 1987, and 1993.

60.     On October 31, 1996, the Internal Revenue Service filed a Notice of Federal Tax Lien against David Andrew Williamson and John Gregory Williamson as nominees of John S. Williamson in regards to Lot 2, Block 6 of the Dinah Road property in the real property records of Bernalillo County, New Mexico in the aggregate amount of  $84,682.92 for tax years 1983, 1985, 1986, 1987, and 1993.

61.      On June 1, 2004, the Internal Revenue Service re-filed a Notice of Federal Tax Lien against David Andrew Williamson and John Gregory Williamson as nominees of John S. Williamson in regards to Lot 2, Block 6 of the Dinah Road property in the real property records of Bernalillo County, New Mexico in the aggregate amount of $69,296.95 for tax years 1985, 1986, 1987, and 1993.

62.     On October 31, 1996, the Internal Revenue Service filed a Notice of Federal Tax Lien against John Gregory Williamson and Garrett James Williamson as nominees of John S. Williamson in regards to Lot 14, Block 5 of the Dinah Road property in the real property records of Bernalillo County, New Mexico in the aggregate amount of $84,682.92 for tax years 1983, 1985, 1986, 1987, and 1993.

63.     On June 1, 2004, the Internal Revenue Service re-filed a Notice of Federal Tax Lien against John Gregory Williamson and Garrett James Williamson as nominees of John S. Williamson in regards to Lot 14, Block 5 of the Dinah Road property in the real property records of Bernalillo County, New Mexico in the aggregate amount of $69,296.95 for tax years 1985, 1986, 1987, and 1993.

64.     On June 9, 1995, the Internal Revenue Service filed a Notice of Federal Tax Lien against John S. Williamson in the real property records of Bernalillo County, New Mexico, for unpaid taxes for years 1980, 1983, 1985, 1986, 1987 and 1993 in the aggregate amount of $89,553.01.

65.     On September 24, 2003, the Internal Revenue Service re-filed a Notice of Federal Tax Lien against John S. Williamson in the real property records of Bernalillo County, New Mexico, for unpaid taxes for year 1993 in the aggregate amount of $376.17.

66.     On November 20, 2003, the Internal Revenue Service re-filed a Notice of Federal Tax Lien against John S. Williamson in the real property records of Bernalillo County, New Mexico, for  unpaid taxes for years 1985 and 1987 in the aggregate amount of $32,178.60.

67.     On June 1, 2004, the Internal Revenue Service re-filed a Notice of Federal Tax Lien against John S. Williamson in the real property records of Bernalillo County, New Mexico, for unpaid taxes for year 1986 in the aggregate amount of $3,724.18.

68.     On January 19, 2000, the Internal Revenue Service filed a Notice of Federal Tax Lien against Nancy L. Williamson in the real property records of Bernalillo County, New Mexico, for unpaid taxes for year 1994 in the aggregate amount of $4,047.61.

69.     On September 5, 2000, the Internal Revenue Service filed a Notice of Federal Tax Lien against Nancy L. Williamson  in the real property records of Bernalillo County, New Mexico, for  taxes for years 1995, 1996 and 1997 in the aggregate amount of $16,684,52.

70.     On January 21, 2004, the Internal Revenue Service filed a Notice of Federal Tax Lien against Nancy L. Williamson in the real property records of  Bernalillo County, New Mexico, for unpaid taxes for year 1998 in the aggregate amount of $5,703.52.

71.     Garrett James Williamson received notices that the Internal Revenue Service filed notices of federal tax lien against him and his brother, David Andrew Williamson, as nominees of his father, John S. Williamson, in regards to Lot 1, Block 6 of the Dinah Road property.

II.

Additional Facts Established at Trial

1.     The Williamsons have a long history of not filing federal income tax returns or filing returns and asserting frivolous arguments known as "tax protester arguments" consisting of taking deductions based on constitutional objections based on Fourth, Fifth, and Sixteenth Amendments, asserting that the Federal income tax statute is unconstitutional, that deficiency determinations are

-14-

based on fraud perpetrated by the IRS, and that the tax assessments deny due process because they violate Fourth and Fifth, and Sixteenth Amendments.

2.      The Williamsons timely filed a joint federal income tax for Chapter 7 bankruptcy. The Commissioner proposed a deficiency of $608 for that year, issuing a notice of deficiency to the Williamsons.   In 1978, the Williamsons petitioned the Tax Court for a redetermination of the deficiency asserted by the IRS.   If a petition has been filed with the Tax Court, no assessment of a deficiency can be made until the decision of the Tax Court becomes final.   26 U.S.C. § 6213(a).

3.      On December 23, 1981, the  Tax Court entered a Memorandum Opinion, finding in favor of the Commissioner and sustaining the deficiency.

4.      The Williamsons did not appeal the adverse  Tax Court decision and it became final. After a decision by the Tax Court becomes final, the Internal Revenue Service may proceed to make the assessment.  26 U.S.C. § 6215(a).

5.      So on May 14, 1982, the IRS, in accordance with the Tax Court decision, made assessments against the Williamsons for income tax deficiency for year 1976 and statutory additions to tax ($901.18) and gave notice of demand for payment thereof.

6.      Knowing the adverse Tax Court decision would become final and the assessments were imminent because they had not appealed the decision, the Williamsons transferred the Dinah Road property by warranty deeds to their then minor sons (12, 10 and 5 years old), on April 30, 1982, two weeks before the IRS made the assessment for the 1976 tax debt.   The Williamsons' transfers  to their minor sons on April 30, 1982, just two weeks before the May 14, 1982,

-15-

assessments for the tax year 1976, were made with actual intent to hinder, delay or defraud the United States, as a creditor.

      7.      By virtue of their neglect or failure to pay in full, after notices of assessment and demands for payment, liens arose in favor of the United States, under 26 U. S. C. Sections 6321 and 6322, as of the date of assessment in an amount equal to the unpaid assessments, plus statutory additions, against all property and rights to property, whether real or personal, of the Williamsons.

      8.      Because the Williamson failed and refused to pay the assessments for year 1976, on April 20, 1983, the IRS filed a Notice of Federal Tax Lien against them in the real property records of Bernalillo County, New Mexico, for tax year 1976 in the aggregate amount of  $901.18.

      9.      On August 1, 1983, the IRS filed a Certificate of Release[2] of Federal Tax Lien against the Williamsons in the real property records of Bernalillo County, New Mexico, for tax year 1976.

      10.     The IRS has no record that John S. Williamson filed an individual federal income tax return for tax years 1977 through 1979.

      11.     The IRS has no record that Nancy L. Williamson filed an individual federal income tax return for tax years 1977 and 1979 through 1982.

      12.     For taxable years 1978 and 1979, and 1980 through 1982,  the Commissioner issued notices of deficiency to the Williamsons.  In each instance, they petitioned the Tax Court for a redetermination of the deficiencies asserted by the IRS.   The Tax Court dismissed for want of prosecution the first petition.  On March 3, 1987, the Tax Court (in Docket No. 42468-86) entered

---

[2] The account appears to have been satisfied, resulting in release of the lien.

a Memorandum Opinion as to the second petition, finding in favor of the Commissioner, determining deficiencies in excess of $7,000 in federal income tax against the Williamsons for years 1980, 1981, and 1982, and imposing $5,000 in sanctions against them for advancing frivolous and groundless arguments.

13.     These deficiencies subsequently were duly assessed (see paragraphs 14 and 15) by the IRS and the assessments, plus the statutory interest that over the years has accrued thereon, accounted for a portion of the Williamsons' tax debt to the United States, the collection of which the Williamsons intended to delay, hinder and defeat by transferring the Dinah Road property to their then minor sons (12, 10 and 5 years old), on April 30, 1982, for no consideration.

14.     In accordance with the Tax Court decision, on the dates and in the amounts set forth below, a delegate of the Secretary of the Treasury made assessments against John S. Williamson for unpaid federal income taxes and statutory additions to tax and gave notice of demand for payment thereof for the tax years 1980, 1981 and 1982:

| Taxable Year Ending | Assessment Date | Assessed Additional Tax | Assessed Penalties | Assessed Interest | Assessed Fees and Collection Costs |
|---|---|---|---|---|---|
| 12-31-80 | 07-28-1987 | $ 1,471.77 | $ 93.78a<br>$367.94b<br>73.59c | $1,706.86 | |
| | 01-07-1988 | | | | $10.00 |
| 12-31-81 | 07-28-1987 | $736.03 | $56.40a<br>$184.01b<br>351.32c | $690.85 | |
| 12-31-82 | 07-28-1987 | $ 2,077.30 | $ 202.25a<br>$519.33b<br>675.50c | $1,317.69 | |

a. estimated tax penalty
b. delinquency penalty
c. negligence penalty

15.      In accordance with the Tax Court decisions, on the dates and in the amounts set forth

below, a delegate of the Secretary of the Treasury made assessments against Nancy L. Williamson

for unpaid federal income taxes and statutory additions to tax and gave notice of demand for

payment thereof for tax years 1978 through 1982:

| Taxable Year Ending | Assessment Date | Assessed Additional Tax | Assessed Penalties | Assessed Interest | Assessed Fees and Collection Costs |
|---|---|---|---|---|---|
| 12-31-78 | 02-19-1985 | $615.00 | $ 19.46a $140.25b 30.75c | $541.69 | |
| | 10-03-1985 | | | | $6.00 |
| 12-31-79 | 02-19-1985 | $644.00 | $27.04a $161.00b 32.20c | $ 506.71 | |
| 12-31-80 | 07-28-1987 | $ 1,199.00 | $ 93.78a $367.94b 59.95c | $1,706.86 | |
| | 01-07-1988 | | | | $10.00 |
| 12-31-81 | 07-28-1987 | $823.00 | $63.06a $205.75b 392.84c | $ 772.48 | |
| 12-31-82 | 07-28-1987 | $ 1,183.46 | $ 115.22a $295.87b 384.82c | $750.69 | |

a. estimated tax penalty
b. delinquency penalty
c. negligence penalty

16.     By virtue of their neglect or failure to pay in full, after notices of assessment and demands for payment, liens arose in favor of the United States, under 26 U. S. C. Sections 6321 and 6322, as of the dates of assessment in an amount equal to the unpaid assessments, plus statutory additions, against all property and rights to property, whether real or personal, of the Williamsons.

17.     Because the Williamson failed and refused to pay these assessments, on October 3, 1985, the IRS filed  a Notice of Federal Tax Lien against Nancy L. Williamson in  the real property

records of Bernalillo County, New Mexico, in the aggregate amount of $2,718.10 and filed a Notice

of Federal Tax Lien against John S. Williamson in the real property records of Bernalillo County,

New Mexico, in the aggregate amount of $3,490.97, for tax years 1978 and 1979.

18.     On or about January 27, 1986, the Williamsons entered into a real estate contract to

purchase additional real property ("1277 Old Highway 66 property")[3] located in Bernalillo County,

New Mexico, for $33,000.00, paying $4,000 in cash and signing a note for $29,000.

19.     The 1277 Old Highway 66 property is more particularly described as follows:

Lot 1 in block numbered 2 of VISTA VALLE SUBDIVISION in NW 1/4 of Section 14,
T10N, R6 E, N.M. P.M., Bernalillo County, New Mexico as the same is shown and
designated on the plat of said subdivision, filed in the office of the County Clerk of
Bernalillo County, New Mexico, on January 22, 1981, in Map Book C17, Folio 189.

20.     The Williamsons purchased the 1277 Old Highway 66 property[4] in January 1986,

nearly fours years after the transfer of the Dinah Road property to their minor sons, despite their

unpaid federal income tax indebtedness owed to the United States for years 1978, 1979, 1980, and

1981 and despite the Notices of Federal Tax Lien filed against them in  the real property records of

Bernalillo County, New Mexico, for tax years 1978 and 1979, on October 3, 1985, more than three

months before.

---

[3]On May 9, 1998, the Williamsons signed a quitclaim deed conveying their interests in
the 1277 Old Highway 66 property to Buffalo Grass Properties Management Co. Ltd. for $7,500.
Deborah Kruhm, John S. Williamson's sister, signed the quitclaim deed for Buffalo Grass
Properties Management Co. Ltd.  See certified copy of Quitclaim Deed.   There is no evidence
that the Williamsons made any payment on their federal tax debts as a result of this transaction.

[4]On information and belief, this property was ultimately seized and sold by the IRS many
years later.

21.     On January 13, 1988, the IRS filed a Notice of Federal Tax Lien against Nancy L. Williamson in the real property records of Bernalillo County, New Mexico, in the aggregate amount of $8,012.83 for tax years 1980, 1981 and 1982.

22.     Because the Williamsons failed and refused to fully pay the amounts assessed against them, the IRS was authorized to use its powers of levy and distraint to compel payment. *See* I. R. C. § 6331; *G.M. Leasing Corp v. United States*, 429 U.S. 338, 349-351 (1977); *United States v. National Bank of Commerce*, 472 U.S. 713, 719-721 (1985).

23.     On or about February 2, 1990, the IRS issued a Notice of Levy to First National Bank of Belen in regard to John S. Williamson d/b/a/ Williamson Water Works for federal income taxes in the aggregate amount of $41,380.34  for tax years 1978, 1979, 1980, 1981, and 1982.

24.     On or about February 2, 1990, the IRS issued a Notice of Levy to First National Bank of Belen in regard to Nancy Williamson for federal income taxes in the aggregate amount of $32,168.08  for tax years 1978, 1979, 1980, 1981, and 1982.

25.     On or about March 9, 1990, the United States filed an Application for a Warrant of Entry to enter Premises to Effect Levy in Case No. 90-1035, styled in the Matter of Indebtedness of  John S. Williamson, and in Case No. 90-1034,  styled in the Matter of Indebtedness of Nancy L. Williamson.  Attached to each application was an Affidavit of Revenue Agent Richard Rose concerning the federal income tax indebtedness of John And Nancy for tax years 1978, 1979, 1980, 1981, and 1982, as of February 28, 1990.  The court issued orders granting these applications.

26.     The IRS scheduled a Public Auction Sale of the rights and interest of the Williamsons in the 1277 Old Highway 66 property for April 24, 1990.

27.     On March 30, 1990, the IRS issued a Levy against John S. Williamson d/b/a/ Williamson Water Works for federal income taxes in the aggregate amount of $20,621.37  for tax years 1978, 1979, 1980, 9881, and 1982.

28.      On March 30,  1990, the IRS issued a Levy against Nancy L. Williamson for federal income taxes in the aggregate amount of $15,977.96,  for tax years 1978, 1979, 1980, 9881, and 1982.

29.     Despite notices of assessment and demands for payment and other collection efforts, including, but not limited to, the filing of notices of federal tax liens and serving of notices of levy, by the IRS, the Williamsons continued to fail and refuse to fully pay their federal income tax indebtedness to the United States for years 1978, 1979, 1980, 1981 and 1982 until the spring of 1990.[5]  This means essentially that the Williamsons had hindered and delayed the Government's collection efforts for nearly eight years <u>after</u> they had conveyed the Dinah Road property to their minor sons for no consideration.

30.     Then, on April 2, 1990,  the Williamsons filed a Chapter 7 bankruptcy proceeding to further hinder and delay the IRS from collecting their federal income tax indebtedness for years 1978, 1979, 1980, 1981 and 1982.  On January 10, 1991, the bankruptcy court entered a discharge order in the Williamsons' bankruptcy case.

---

[5]The Internal Revenue Service Transcripts indicate that no payments were received and no credits were available to be applied to the Williamsons' federal income tax indebtedness for years 1978, 1979, 1980, 1981 and 1982 until 1990.

31.     Because the Williamsons  did not file returns for years 1978 through 1982, the taxes

for those years were excepted from discharge under 11 U. S. C. §§ 523 (a) (1) (B) (i) and 727 (b).

32.     The IRS continued its efforts to collect the Williamsons unpaid income taxes for

years1978, 1979, 1980, 1981 and 1982 by filing notices of federal tax liens.

33.     On July 16, 1990, the IRS filed a Notice of Federal Tax Lien against David Andrew

Williamson and John Gregory Williamson, as Nominees of  Nancy L. Williamson in regards to Lot

1, Block 6 of the Holiday Hills plat ( Dinah Road property) in the real property records of  Bernalillo

County, New Mexico in the aggregate amount of $10,585.51 for tax years 1978, 1979, 1980, 1981,

and 1982.

34.     On July 16, 1990, the IRS filed a Notice of Federal Tax Lien against Garrett James

Williamson and David Andrew Williamson, as Nominees of  Nancy L. Williamson in regards to Lot

1, Block 6 of the Holiday Hills plat ( Dinah Road property) in the real property records of  Bernalillo

County, New Mexico in the aggregate amount of $10,585.51 for tax years 1978, 1979, 1980, 1981,

and 1982.

35.     On July 16, 1990, the IRS filed a Notice of Federal Tax Lien against John Gregory

Williamson and  Garrett James Williamson as Nominees of  Nancy L. Williamson in regards to Lot

1, Block 6 of the Holiday Hills plat ( Dinah Road property) in the real property records of  Bernalillo

County, New Mexico in the aggregate amount of $10,585.51 for tax years 1978, 1979, 1980, 1981,

and 1982 on July 16, 1990.

36.     On March 12, 1991, the IRS filed a Notice of Federal Tax Lien against

David Andrew Williamson and  John Gregory Williamson as Nominees of Nancy L. Williamson in

the real property records of Bernalillo County, New Mexico in the aggregate amount of $10,585.51 for tax years 1978, 1979, 1980, 1981, and 1982.

37.     On March 12, 1991, the IRS filed a Notice of Federal Tax Lien against Garrett James Williamson, Nominee of David Andrew Williamson, as Nominee Nancy L. Williamson in the real property records of Bernalillo County, New Mexico in the aggregate amount of $10,585.51 for tax years 1978, 1979, 1980, 1981, and 1982.

38.     On March 12, 1991, the IRS filed a Notice of Federal Tax Lien against John Gregory Williamson, Nominee of Garrett James Williamson, as Nominees Nancy L. Williamson in the real property records of Bernalillo County, New Mexico in the aggregate amount of $10,585.51 for tax years 1978, 1979, 1980, 1981, and 1982.

## PROPOSED CONCLUSIONS OF LAW

### I.

<u>The taxpayers' transfers of Dinah Road property to their minor sons were fraudulent</u>

39.     In New Mexico, the law of fraudulent conveyances was codified by the adoption of the Uniform Fraudulent Conveyance Act, NMSA § 56-10--1 to 56-10-13. *Allied Products Corp v. Arrow Freightways,* 724 P.2d 752 (N.M. 1986).

40.     The Uniform Fraudulent Conveyance Act was repealed in New Mexico and replaced by the Uniform Fraudulent Transfer Act §§ 56-10-14 to 56-10-25, effective June 16, 1989. Since the transfers in this case took place in 1982, the Uniform Fraudulent Conveyance Act (UFCA) rather than the Uniform Fraudulent Transfer Act (UFTA) will govern. *Cf. Production Credit Association of Minot v. Klein,* 385 N.W.2d. 485 (N.D. 1986).

41.      In any event, the New Mexico Supreme Court has held that sections 56-10-18 and 56-10-19 of the Uniform Fraudulent Transfer Act are essentially a re-certification of sections 56-10-4 and 56-10-7 of the Uniform Fraudulent Conveyance Act, which voided transfers made as a result of either constructive or actual fraud. *Dona Ana Savings and Loan Association v. Doffemeyer*, 855 P. 2d 1054 (N.M. 1993).

42.      Section 56-10-4 of the UFCA provides as follows:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

43.      Under NMSA §56-10-9A [§56-10-21A of the Uniform Fraudulent Transfer Act], a creditor may set aside a fraudulent transfer to the extent necessary to satisfy the creditor's claim. Under NMSA §56-10-7 [§56-10-18 of the Uniform Fraudulent Transfer Act], every conveyance made with actual intent to hinder, delay or defraud, either present or future creditors, is fraudulent.

44.      Under NMSA §56-10-4 [§56-10-19A of the Uniform Fraudulent Transfer Act], every conveyance made  by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made without a fair consideration. The purpose of the Uniform Fraudulent Conveyance Act was to protect creditors when a debtor has made a conveyance of his property which diminishes the creditor's assets to the detriment of the rights of the creditor. *Michel v. J.'s Foods, Inc*. 99 N.M. 574, 661 P.2d 474 (1983).

45.      To set aside a transfer under NMSA §56-10-4, the creditor must prove both insolvency and lack of consideration by clear and convincing evidence. *See First National Bank in Albuquerque v. Abraham*, 639 P.2d 575 (N.M. 1982).

46.     Unassessed taxes are debts within the meaning of the Uniform Fraudulent Conveyance Act.  *United States v. Plastic Electro-Finishing Corp.*, 313 F. Supp. 330 (E.D. N.Y. 1970) and *United States v. St. Mary*, 334 F. Supp. 799 (E.D. Pa. 1971).

47.     Under the Uniform Fraudulent Transfer Act, a transfer is fraudulent if it is made with the intent to merely hinder and delay creditors, rather than to defraud them of ultimate payment. *Flushing Savings Bank  v. Parr*, 438 N.Y.S. 2d 374 (N.Y. 1981);  *Klein v. Rossi*, 251 F. Supp. 1 (E.D. N.Y. 1966); *M&N Freight Lines v. Kimbel Lines*, 170 S.W. 2d 186 (Tenn. 1943)

48.     The commonly accepted badges of fraud are (1) lack of fair consideration, (2) retention of the property by the grantor, (3) the close relationship between the transferor and the transferee and (4) the threat or pendency of legal action.  *Western Production Credit Ass'n v. Kear*, 723 P.2d 965 (N.M. 1986); *First National Bank in Albuquerque v. Abraham*, 639 P. 2d 575 (N.M. 1982).

49.     The later enacted statute, which restates elements of the Uniform Fraudulent Conveyance Act, NMSA 56-10-18B, elaborates on these badges of fraud and provides that, in determining actual intent, consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation that incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred.

50.     Not all the above-referenced indicia of fraud need be present to serve as a basis for inference of fraud.  *Dona Ana Savings and Loan Assoc. v. Dofflemeyer*, 855 P.2d at 1057; *In re: Taylor,* 133 F.3d 1336 (10th Cir. 1998).

51.      Since direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish the fraudulent intent.  *Western Production Credit Ass'n v. Kear*, 723 P.2d 965 (N.M. 1986); *Roland v. United States*, 838 F.2d 1400, 1402-03 (5th Cir. 1988).

52.     Here, the evidence demonstrates that the April 30, 1982, transfers of the Dinah Road property by the Williamsons to their then minor sons were made without consideration and with intent to delay, hinder or defraud the United States as a creditor.  NM Section 56-10-7.  The transfers of the  Dinah Road property meet the criteria as fraudulent when considering the factors under Section 15-10-18 (B) that are present here.

53.     Factors (1), (2), (4) and (10) weigh against the Williamsons.

54.     First, the Williamsons transferred the Dinah Road property to insiders, their three minor sons.

55.     Second, the Williamsons retained possession and control of the Dinah Road property after the transfers to their sons.  After the transfers, they continued to live on the Dinah Road property, rent free, for about ten years.  They continued to pay the propane gas bills, the electricity bills, and the ad valorem property taxes for the Dinah Road property after April 30, 1982, while they continued to live there with their sons.

56.     Third, the transfers by the Williamsons were made without receiving a reasonably equivalent value in exchange.  The  evidence in this case establishes that the Williamsons conveyed their interests in the Dinah Road property to their three minor sons without consideration.

57.      Fourth, the transfers occurred when the Williamsons intended to incur, or believed, or reasonably should have believed, that they would incur debts, including the federal income tax liabilities, beyond their ability to pay as they became due.   On the date of the transfers of their interests in the Dinah Road property, the Williamsons had not paid their federal income taxes for year 1976, as determined by the Tax Court only four months earlier, and had failed to file federal income tax returns for years 1978, 1979, 1980 and 1981.  The Tax Court later determined income tax deficiencies in excess of $7,000 for years 1980, 1981 and 1982, and imposed $5,000 in sanctions against them for advancing frivolous and groundless arguments.

58.     However, the law provides that the IRS's claims arose much earlier, on the dates on which the tax returns were due to be filed. *United States v. Adams Bldg. Co.,* 531 F.2d 342, 343 n.2 (6th Cir.1976);  *see also In re Luongo,* 259 F.3d 323, 334 (5th Cir.2001) (holding that a debt arises when the tax obligation accrues, and that the obligation accrues upon the occurrence of the event triggering the liability); *Selbe v. United States,* 912 F. Supp. 202, 205 (W.D. Va.1995).  Therefore,

the liabilities for 1978, 1979, 1980 and 1981 arose when the returns for those years were due to be filed.  There is no evidence that they requested extensions to file income tax returns for those years.  With regard to  tax years 1978, 1979, 1980 and 1981, the the Williamsons' obligation to pay these taxes arose on the due date of the return for those years, which was April 15 of 1979, 1980, 1981 and 1982.  Clearly, IRS's claims for 1976, 1978, 1979, 1980 and 1981 taxes arose <u>before</u> the Dinah Road property lots were transferred on April 30, 1982.  Thus, the Williamsons were already debtors to the United States at the time of the transfers.

59.     John S. Williamson admits he did not file federal income tax returns for years 1978 through and including 2005.  There is no evidence that Nancy L. Williamson filed federal income tax returns for years 1978 through and including 2005.  In *United States v. Chapman*, 756 F.2d 1237 (5th Cir. 1985), the Fifth Circuit agreed with the Government that the transfer there was fraudulent under Texas law, noting that "[a] transfer made with a fraudulent intent to evade *future* liabilities is void as to *subsequent creditors*."  *Id.* at 1241 (citations omitted, emphasis added).

60.     The evidence clearly demonstrates that the transfers of the Dinah Road property lots by the Williamsons to their then minor sons were made without consideration and with actual intent to delay, hinder or defraud the United States as a creditor.  The purported transfers of the Dinah Road property lots to their minor sons were made while the Williamsons had current federal tax liabilities and in anticipation of their incurring future federal tax liabilities and their efforts to defeat such liabilities.  In making the purported transfers, the Williamsons intended to incur, or believed or reasonably should have believed, that they would incur debts, including  federal tax liabilities, beyond their ability to pay as they became due.

61.     The Court finds that the testimony of the Williamsons and the Williamson defendants is not credible.  The Williamsons' explanations that the transfers were gifts and that they were made to protect the sons in the event their marriage did not survive are implausible in light of all the surrounding facts and circumstances.  Rather than protecting the sons, the Williamsons made the transfers to delay, hinder or defraud the United States as a creditor.   This is evident from their conduct after the transfers.  They successfully delayed and hindered the United States as a creditor and refused to pay their taxes for the tax years 1978 through 1981  more than ten years after assessment, until the collection statutes expired.

62.     The Court also finds that the evidence is clear and convincing that badges of fraud exist and that the Williamsons' transfers of the Dinah Road property lots to their minor sons were made with actual intent to hinder, delay or defraud the United States, as a creditor.

63.     The Court therefore concludes that the transfers were fraudulent under either the UFCA or the UFTA, and should be set aside.

II.

<u>The sons hold the Dinah Road property as nominees of their parents</u>

64.     When legal title to property is held in the name of a third party for the benefit of the taxpayer, the courts consider that it is held in a nominal or representative capacity for the taxpayer. *United States v. Webb*, 595 F.2d 203 (4th Cir. 1979).  The property becomes subject to the taxpayer's liability.  *United States v. Miller Brothers Construction Co.*, 505 F.2d 1031 (10th Cir. 1974).

65.     To find a nominee's relationship, the courts consider whether there was consideration for the transfer; whether there was anticipation of a lawsuit or liabilities; whether the

transferor retains dominion or control; the relationships between the taxpayer and the nominees; the failure to record the conveyance; retention of possession by the taxpayer; and whether or not state property taxes have been paid by the taxpayer.  When such a situation is found, the property is impressed with a constructive trust.  The constructive trust is imposed by law because a person holding title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property.  *Aragon v. Rio Costilla Coop Livestock Ass'n* 112 N.M.152, 812 P.2d 1300, 1304 (1991);  *see e.g., Garcia v. Marquez*, 101 N.M. 427, 684 P.2d 513 (1984).

66.     Whenever legal title is in one person but the beneficial interest, either from payment of the purchase price or other circumstances, is either wholly or partially in another, the courts will find that the nominees hold the property in trust, and that federal tax liens of the United States attach to the property.  *United States v. Williams*, 581 F. Supp. 756 (N.D. Ga. 1982), *aff'd* 729 F.2d 1340 (11th Cir. 1984).

67.     The nominee characterization is utilized to determine whether property should be construed as belonging to the taxpayer if he/she treated and viewed the property as his/her own, in spite of the legal machinations employed to distinguish legal title to the property.  *In re Grothues*, 245 B.R. 828, 832 (W.D. Tex. 1999), *rev'd on other grounds*, 226 F.3d 334 (5th Cir. 2000). *Grothues* adopted the analysis of *In re Richards*, 231 B. R. 571 (E.D. Penn. 1999), where that court further explained the nominee theory:

> Focusing on the relationship between the taxpayer and the property, the theory attempts to discern whether a taxpayer has engaged in a sort of legal fiction, for federal tax purposes, by placing legal title to property in the hands of another while, in actuality, retaining all or some of the benefits of being the true owner.

*Richards,* 231 B.R. at 579.

68.     The critical consideration in determining whether to apply the nominee theory is whether the taxpayer exercised active or substantial control over the property.  *Richards*, 231 B.R. at 579, *citing United States v. Kudasik*, 21 F. Supp. 2d 501, 508 (W.D. Pa. 1988).  There are other factors to consider.  However, they are not applied rigidly or mechanically, because no one factor is determinative.  *Id.*

69.     Here, as noted above, the minor sons paid no consideration for the transfers.  On the date of the transfers, John S. Williamson and Nancy L. Williamson owed federal income tax liabilities.  After they transferred the Dinah Road property to their sons, they retained dominion and control of the property.  The relationships between the taxpayers and the nominees were that of parents and children.

70.     After the transfers of their interests in the Dinah property to their minor sons, John S. Williamson and Nancy L. Williamson continued to live on the Dinah Road property and to pay the utility bills and ad valorem property taxes for about ten years.  (Deposition of John Gregory Williamson, p. 11).  Thus, John S. Williamson and Nancy L. Williamson continued to exercise active or substantial control over the property.

71.     Based on the undisputed facts in this case, the Court concludes that Garrett James Williamson, David Andrew Williamson, and John Gregory Williamson hold title to the Dinah Road property as nominees of their parents, John S. Williamson and Nancy L. Williamson, and the federal tax liens attach to this property.

72.     Any conclusion of law which is more properly deemed to be a finding of fact is hereby adopted as a finding of fact.

73.     For the foregoing reasons, the United States is entitled to judgment: 1) setting aside the Williamsons' transfers of the Dinah Road property lots to their sons, as fraudulent; 2) or in the alternative, determining that the sons, John Gregory Williamson, David Andrew Williamson, and Garrett James Williamson hold title to the Dinah Road property as nominees of their parents; 3) determining that its federal tax liens are valid against the Dinah Road property; and 4) foreclosing the federal tax liens upon the Dinah Road property (and the Ben Road property), with the sale proceeds to be distributed according to the findings of this Court and the rights of the parties as determined by the Court.

Respectfully submitted,

DAVID IGLESIAS
United States Attorney


/s/ Waymon G. DuBose, Jr.
WAYMON G. DuBOSE, JR.
Trial Attorney, Tax Division
State Bar No. 06152000
U. S. Department of Justice
717 N. Harwood, Suite 400
Dallas, Texas  75201
(214)  880-9726
(214)  880-9741 (facsimile)

UNITED STATES ATTORNEYS

<u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing Proposed Findings of Fact and

Conclusions of Law has been made the  1st  day of November, 2006, by mailing a copy thereof to:

John S. Williamson                       David Andrew Williamson
1277 Historic Rte. 66E.                  1277 Old Hwy 66 E
Tijeras, New Mexico 87059                Tijeras, New Mexico 87059

Nancy L. Williamson                      Deborah Kruhm
1277 Historic Rte. 66E.                  2267 Calle Pulido
Tijeras, New Mexico 87059                Santa Fe, New Mexico 87505

John Gregory Williamson                  Deborah Kruhm
1277 Old Hwy 66 E                        P.O. Box 23899
Tijeras, New Mexico 87059                Santa Fe, New Mexico 87502-3899

Garrett James Williamson                 Susanne Roubidoux Farr
824 Adams St. NE                         Special Assistant Attorney General
Albuquerque, New Mexico 87110            New Mexico Taxation and
                                         Revenue Department
                                         P.O. Box 630
                                         Santa Fe, New Mexico 87504-0630


                                         /s/ Waymon G. DuBose, Jr.
                                         WAYMON G. DUBOSE, JR.